NASH–FINCH COMPANY, a corporation,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 4–58–Civ.–13.

United States District Court
D. Minnesota,
Fourth Division.

June 17, 1960.

Raymond Scallen and Hayner Larson, Minneapolis, Minn., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Jerome Fink and Lee Phillips, Atty., Dept. of Justice, Washington, D. C., for defendant.

DEVITT, Chief Judge.

Taxpayer seeks recovery of $33,129.57 in federal transportation taxes paid in 1950. Claims for refund were duly filed and rejected, and this action was timely instituted. The Court has jurisdiction under 28 U.S.C. § 1346(a) (1) (III Supp., 1952 ed.).

Taxpayer conducts a wholesale grocery business in the United States with its principal office in Minneapolis, Minnesota. In the normal course of its business it caused shipments of merchandise to be shipped by rail wholly within the United States. For the undenied purpose of avoiding the payment of the 3% federal transportation tax then prevailing, it caused freight bills incurred during the months of July, August, September and October, 1950 to be paid by check in the Dominion of Canada, taking the position that the tax imposed by the law did not apply to these payments, but only to amounts "paid within the United States." Int.Rev.Code of 1939, § 3475, added by ch. 619, tit. VI, § 620(a), 56 Stat. 979 (1942), 26 U.S.C. § 3475.

This taxing statute reads in full as follows:

"(a) Tax.—There shall be imposed upon the amount *paid within the United States* after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under this section. In the case of property transported from a point without

the United States to a point within the United States the tax shall apply to the amount *paid within the United States* for that part of the transportation which takes place within the United States. The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation." [Italics supplied]

The facts are not in dispute and have been stipulated to be as follows:

"1. The plaintiff, Nash-Finch Company, at all times hereinafter mentioned was and now is a corporation organized and existing under and by virtue of the laws of the State of Delaware; that plaintiff's principal place of business in Minneapolis, Hennepin County, Minnesota, and within the territorial jurisdiction of this Court; that this Court has jurisdiction of this cause under the provisions of Title 28 United States Code, Section 1346(a) (1).

"2. During the period of July through October 31, 1950, the plaintiff in the course of its business shipped quantities of merchandise over the lines of various carriers and between various points in the United States. All such shipments originated and terminated in the United States. These railroads sent their bills for freight for the aforesaid shipments to the plaintiff at its offices in the United States. Each day during the months of July, August, September and October, 1950, as the freight bills were received by plaintiff at its office in Minneapolis, Minnesota, it drew a check or checks for the aggregate amount of the transportation charges due, plus the 3% transportation tax imposed by Section 3475(a) of the Internal Revenue Code of 1939, the checks being made payable to the respective rail carriers and drawn on the First National Bank of St. Paul, Minnesota, where plaintiff main-

tains an account; such checks were then promptly mailed to an employee of the plaintiff, Miss Gail Florence, a citizen and resident of Winnipeg, Canada, and Miss Florence delivered the bills and checks pursuant to the instruction and authorization of the plaintiff, to the duly authorized agents of the rail carriers at their respective offices in Canada; the agents of the sale rail carriers, in the course of the business of and on behalf of the respective rail carriers, accepted said checks and then and there marked or stamped the freight bills with the word "Paid" and the date and location of the agent of the rail carrier's office in Canada, with a further designation on said freight bills—"Payment made in Winnipeg, Canada—Transportation Tax Collected", or words of similar import, and the agent of the rail carrier in the course of his business then delivered the receipted bills to plaintiff's said employee in Winnipeg, Canada. That on each of said freight bills the plaintiff was required to pay a tax of 3%, which tax was collected by the rail carriers under the direction of the Commissioner of Internal Revenue, and that this collection was made simultaneously with the collection of the transportation charges. Plaintiff has no precise knowledge as to the procedure followed by the rail carriers but for the purposes of the instant action it is agreed that the bank checks were subsequently honored by the aforementioned First National Bank of St. Paul and charged to the account of the plaintiff.

"3. Plaintiff's only purpose in employing Miss Florence and in mailing checks in payment of said bills to Winnipeg for delivery to agents of the rail carriers was to save the aforementioned taxes.

"4. The following is a recapitulation of the transportation taxes paid and the names of the rail carriers to whom such taxes were paid

by plaintiff, and the Collectors (now District Directors) of Internal Revenue of the Collection districts to whom said carriers in turn paid taxes, is as follows:

"Paid to the Collector (now District Director) of Internal Revenue at St. Paul, Minnesota:

| | |
|---|---|
| Great Northern Railroad | $ 6,833.11 |
| Northern Pacific Railroad | 7,176.41 |
| Chicago, St. Paul, Milwaukee & Omaha Railroad | 402.74 |
| Minneapolis & St. Louis Railroad | 357.19 |
| Minneapolis, St. Paul & Sault Ste. Marie Railroad | 1,781.55 |
| | $16,551.00 |

"Paid to the Collector (now District Director) of Internal Revenue at Chicago, Illinois:

| | |
|---|---|
| Chicago, Burlington & Quincy Railroad | $ 2,215.50 |
| Chicago, Great Western Railroad | 370.33 |
| Chicago, Milwaukee, St. Paul & Pacific Railroad | 4,998.66 |
| Chicago North Western Railroad | 2,315.12 |
| Chicago, Rock Island & Pacific Railroad | 4,292.06 |
| Illinois Central Railroad | 39.03 |
| | $14,230.70 |

"Paid to Collector (now District Director) of Internal Revenue at Omaha, Nebraska:

| | |
|---|---|
| Union Pacific Railroad | $ 2,347.87 |

"5. That plaintiff duly filed claims for refund of the said amounts paid as taxes aforesaid with the Collector of Internal Revenue in the Collection Districts within which are located the respective rail carriers; that each of said claims was subsequently transferred to the jurisdiction of the District Director of Internal Revenue for the District of Minnesota, and that on January 18, 1956, the Commissioner of Internal Revenue formally disallowed plaintiff's claims for refund; that plaintiff has never received any refund whatsoever of said taxes, in whole or in part, and is now and always has been the sole owner of said claims for refund."

The question is whether the transportation charges paid under these circumstances are taxable under the statute.

This issue has divided the Courts. In 1955, the Court of Claims in Kellogg Co. v. United States, 133 F.Supp. 387, 132 Ct.Cl. 507, by a three-two decision, held in a similar set of facts that the 3% tax was owing, although the charges were actually paid by the transfer of cashier's checks outside of the United States. The concurring opinion took the view that payment had been made within the United States. Two Court of Claims judges joined in a strong dissenting opinion. Later, in 1959, the Ninth Circuit Court of Appeals, in an eight-judge en banc decision, on rehearing, held under fairly similar circumstances that the excise tax was not owing. Fisher Flouring Mills Co. v. United States, 9 Cir., 270 F.2d 27; see also the accompanying ruling on the same date, Pacific Gamble Robinson Co. v. United States, 9 Cir., 1959, 270 F.2d 35.

The arguments pro and con are fully set out in these decisions. It is my view that the Fisher Flouring Mills decision enunciates the better rule of law and states a more logical interpretation of the Congressional expression. The essence of that decision is that Congress imposed a tax upon the amount *paid within the United States* (twice repeated in the statute), and accordingly that must be what Congress meant. Subsequently, Congress amended the law so as to include as taxable the amounts paid "within or *without* the United States," indicating its intention to cover the apparent "loophole" in the first statute. Tit. IV, § 607(b), 64 Stat. 966 (1950).

The words used by Congress were not ambiguous. It might well be that Congress *intended* to tax amounts

**738**

paid under the fact situation here present, but the simple fact is that it did not say so. Judicial officers must interpret, not make or remake, the law.

The taxpayer is entitled to recover the taxes paid for the period in question. Plaintiff's counsel will please prepare appropriate findings.